**James Douglas DAVIS, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–82–232.**

Court of Criminal Appeals of Oklahoma.

Nov. 6, 1985.

**208**

Opio Toure, Asst. Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., William H. Luker, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Presiding Judge:

The appellant, James Douglas Davis, was charged in the District Court of Payne County, Case No. CRF–81–244, with the offenses of Murder in the First Degree and Burglary in the Second Degree, After Former Conviction of a Felony. He was tried before a jury, and found guilty of both offenses. The jury fixed punishment at death for the murder conviction, and at thirty five (35) years' imprisonment for the burglary conviction.

On appeal to this Court, appellant raises sixteen assignments of error challenging the judgment of guilt on each of the two offenses, and the sentence of death. However, we will deal with only one of these assignments of error, as we deem it necessary to reverse and remand this case for a new trial.

■ Appellant's principal contention arises from the assignment of error that he was improperly tried in leg shackles during both the guilt and punishment phases of trial. Both parties conceded during oral argument that the appellant was so tried. Appellant alleges this procedure was in violation of 22 O.S.1981, § 15, and we agree.

Title 22 O.S.1981, § 15 states that

No person can be compelled in a criminal action to be a witness against himself; nor can a person charged with a public offense be subjected before conviction to any more restraint than is necessary for his detention to answer the charge, *and in no event shall he be tried before a jury while in chains or shackles.* (Emphasis added).

In Judge Nix's landmark opinion in *French v. State*, 377 P.2d 501 (Okl.Cr.1962), the policy behind this statute was explained. The Court, with Judges John A. Brett and Hez J. Bussey concurring, determined that "two inherent rights [belonging] to all men who come before the bar of justice" are protected by the strict enforcement of this statute.

First, one charged with a crime is entitled to appear in court with free use of

his faculties, both mentally and physically. . . .

\* \* \* \* \* \*

The other inherent right intended to be preserved by the Statute was the presumption of innocence that every defendant is cloaked with, until proven guilty . . . '[A] prejudice might be created in the minds of the jury against a prisoner who should be brought before them handcuffed and shackled, which might interfere with a fair and just decision of the question of the guilt and innocence of such prisoner', [*quoting,* 14 *Am.Jur.* at 855].

*Id.* at 502–503. *See also McQueen v. State,* 421 P.2d 284 (Okl.Cr.1966). Subsequent to *French v. State,* and *McQueen v. State,* this Court held in *Peters v. State,* 516 P.2d 1372 (Okl.Cr.1983), that the rights guaranteed by this statute may be waived "if defendant engages in misconduct so disruptive and disrespectful that the trial cannot continue." *Id.* at 1374–75. However, in the absence of a waiver, the trial court has no discretion in this matter, and the defendant *shall not* be handcuffed or shackled during the trial itself.

 In this case, the record clearly establishes that the appellant was brought into the courtroom in leg shackles; accordingly, the statute was violated, as this rule presupposes that a defendant has the opportunity to appear before the jury unrestrained. *Accord In Re L.B.,* 645 P.2d 498 at 500 (Okl.1982). The record fails to establish any disruptive or disrespectful conduct on the part of appellant justifying use of shackles. Moreover, there is not a scintilla of evidence that the appellant planned to disrupt the trial. *See e.g. In Re L.B.,* 645 P.2d at 500 n. 1. Appellant was apparently shackled at the direction of the County Sheriff, and no basis for that decision is found in the record. We therefore hold that 22 O.S. 1981, § 15 was violated.

The State argues, however, that appellant was not prejudiced, in that the record fails to establish positively that the jurors saw the shackles during the first stage of trial. He claims that, at worst, the shackles were seen by the jury only in the second stage of trial, as appellant made his way to the witness stand. He therefore argues that any error was limited to the second stage of trial, and the convictions, at the least, should be affirmed. This argument is meritless. As we explained in *McQueen v. State:*

> The trial judge . . . [explained] into the record that he believed the defendant was not prejudiced by the handcuffs, in that the jury could not see them. However, there is nothing in the record to substantiate his view from any of the jurors. The trial judge had no control over this. The statute is explicit in stating *"In no event."* It does not say that it is permissible if the jury cannot see the handcuffs, or if they are covered with a handkerchief. It says *"In no event."*
>
> This Court will not make an exception to the statute. The manacling of a person when upon trial for a criminal offense, whether bringing him into court . . . while in the presence of the jury, or at any stage of the trial, cannot be too strongly condemned.

*Id.* at 287. Error of this magnitude compels us to reverse the convictions herein, and remand the case for a new trial.[1]

Accordingly, the judgment and sentence is REVERSED and REMANDED for a new trial.

BRETT, J., specially concurs.

BUSSEY, J., dissents.

BRETT, Judge, specially concurring.

I concur in this decision. The opinion makes it clear that exceptions to the stat-

---

1. Even if the shackling of this appellant had occurred only during the sentencing stage, we would be obligated to modify the sentence, rather than remand this case for re-sentencing. Although the Legislature has recently provided for resentencing of capital cases, *see* 21 O.S.1985, Supp. 701.13, we have held that application of this enactment to those cases pending on appeal would render the new statute an *ex post facto* law. *Green v. State,* 56 O.B.J. at —— n. 4 (Okl.Cr.1985).

ute may develop, but I choose to emphasize that point. Notwithstanding the fact that the statute states, "in no event", certain exceptions may develop that would authorize the restraint of a defendant, but a defendant must demonstrate that he will not cooperate in the trial proceedings before he may be restrained. Initially the trial judge has no discretion concerning whether or not a defendant should be restrained. However, once a defendant demonstrates that he intends to disrupt the trial, judicial discretion comes into play. As set forth by the United States Supreme Court, in *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), when the defendant disrupts the trial, the trial judge may take necessary steps to control the decorum of his courtroom even to the removal of the defendant from the courtroom.

In the instant case no. such disruption occurred. The record reflects that the Sheriff considered the defendant to be a security risk and said prior to taking the defendant to the courtroom, "Shackle the son of a bitch." The Sheriff does not control the courtroom. That is the responsibility of the trial judge. The trial judge is bound to proceed in accordance with the terms of 22 O.S. 1981, § 15 until some reason develops to proceed otherwise. Further, when restraint becomes necessary, the record should be made completely clear why restraint is being applied.

I agree with that part of Judge Bussey's dissent that sets forth that the evidence of appellant's guilt is overwhelming. It is. But that does not solve the problem confronting this Court. While there are exceptions to the "in no event" provision, it is the defendant's own behavior that strips him of the right to be shackle-free, not the quantum of evidence of guilt produced by the State.

James D. French, in *French v. State*, 377 P.2d 501 (Okl.Cr.1982), was tried three times before his trial was affirmed for the death penalty. French, like Davis, was shackled at trial. The only difference between French's trial and appellant's trial lies in the fact that the first two days of French's trial he was led into the courtroom shackled in the presence of the jury, or jurors. In appellant's case, it is not clear who might have observed him shackled. I am of the opinion this Court's unanimous statement in the *French* case is worth repeating:

Until 1953, the Statute read: (Title 22 O.S.A. § 15–1951.)

'The defendant is not to be subjected to any more restraint than is necessary for his arrest and detention.'

This left the court with a broad discretion to determine what was necessary, but in 1953, the Statute was amended by the addition of the following language:

'* * * and in no event shall he be tried before a jury while in chains and shackles.'

This removed any and all discretion that the trial court had. It was predicated upon the theory that a man brought before the court in chains and shackles was prejudiced in the minds of the jury. They would ultimately draw the conclusion that defendant was a dangerous criminal who had to be chained and shackled to prevent his escape or prohibit him from doing harm to others or any act of violence.

Even in absence of a statute and where the court had discretion, the Fla. Court said: (*Shultz v. State*, 131 Fla. 757, 179 So. 764–765)

'Every person is presumed to be innocent of the commission of crime and that presumption follows them through every stage of the trial until they shall have been convicted. It is, therefore, highly improper to bring a person who has not been convicted of crime, clothed as a convict and bound in chains, into the presence of a venire or jury by whom he is tried for any criminal offense and, when such condition is shown by the record to have

obtained, in many cases it might be sufficient grounds for a reversal.'

Bear in mind this ruling was made without a statute that, 'In no event can a defendant be tried before a jury in chains and shackles'. Our Statute permits no discretion nor ramifications. It simply says it shall not be done.

Significance can be attached to the above decision as it presents the irrevocable damage that is done to defendant to bring him in such condition before a *venire or jury.*

In the case of *Blair v. Commonwealth,* supra, the court said (188 S.W. [390] page 393):

> 'We, however, regard it our duty to say that the manacling of a person when upon trial for a criminal offense, whether bringing him into court, *while in the presence of the court or jury or at any stage of the trial,* under such circumstances as appear to have attended the handcuffing of appellant, cannot be too strongly condemned.'

We share this expression of the Kentucky Court. Though biologically speaking, man may be an animal, it was never intended that he be treated as such in the realm of criminal jurisprudence. If we permitted the subjection of man to such treatment before the courts of our land, we have paved the way for him to be tried while tied to a log or in a steel cage, as well as chains and shackles. Barbarism has been abandoned and must never be permitted to creep back through the crevices created by lenient rules of law. Our Statute in no uncertain language, says *'It shall not be done'*, and we see no reason for relaxing the rule. *Id.* at 503–04.

Therefore, I concur in granting appellant a new trial.

BUSSEY, Judge, dissenting:

I must respectfully dissent to the remanding of this case for a new trial. The State's evidence overwhelmingly establishes that on July 10, 1981, Jackie Frick was viciously attacked by the appellant with an aluminum baseball bat in the parking lot outside a bar in Stillwater, Oklahoma. As a result of the ruthless beating, the victim received multiple lacerations to the head, fractures of the skull, brain damage, hemorrhage, and dislocated teeth, and died several hours after the injuries were inflicted.

At trial, the State called fifteen witnesses and produced overwhelming evidence of the appellant's guilt including testimony of the appellant's girlfriend who witnessed the slaying and identified the appellant as the one who beat the victim to death. The State also introduced evidence that was discovered at the appellant's residence: stereo equipment stolen from the victim's trailer, a pair of tennis shoes, and a pair of blood-stained blue jeans. The State further introduced blood scrapings from the appellant's ankles and the bloody baseball bat used in the beating. The blood on all of these items was type A, the victim's blood type. In addition to this evidence, many individuals testified and all of the testimony unquestionably inculpated the appellant as the man who brutally murdered Jackie Frick.

The appellant called no witnesses during the guilt stage of the proceeding.

This record is devoid of any evidence tending to establish that the jury ever saw the appellant shackled during the guilt stage of the trial. But to the contrary, the record reflects that the trial judge stated:

> But my recollection is that the jury never saw the defendant moving about during the course of the trial. The jury always entered or exited at different time than the defendant, except when the defendant did take the stand in the punishment stage. And I assume, even though these chains were not readily observable, fact is, I didn't even, he's been up here several times and I didn't even know he had chains on. But I assume the jury probably could have seen them during the sentencing stage.

I am of the opinion that the conviction should be affirmed, but that the cause should be remanded for resentencing pursuant to 1985 Okla.Sess.Laws, ch. 265, § 701.13 to ensure that the appellant is not prejudiced by the leg shackles which the jury observed during the sentencing stage of the trial. However, there is no reason to reverse this case for a new trial since the evidence of guilt is overwhelming, since there is a total lack of evidence that the jury ever observed the leg shackles during the first stage of the trial, and since the appellant is wholly unable to show that he was prejudiced during the guilt stage of the trial.